UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:21-CR-00153-02** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CHARLES D GARDNER (02)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Motion for Reconsideration filed by Plaintiff, United States of America (the "Government") [Doc. No. 463]. Defendant, Charles Gardner ("Defendant") filed a response [Doc. No. 468] and the Government filed a reply [Doc. No. 469]. The Court previously granted Defendant's motion for bail pending appeal on the basis that the first issue on appeal, involved a substantial question of potential benefit to Defendant [Doc. No. 452]. The Government now asks the Court to reconsider that ruling based upon *United States v. Ryan*, 156 F.4th 583 (5th Cir. 2025).

For the reasons stated below, the Government's Motion is **GRANTED**.

**I.    BACKGROUND**

A jury, on April 23, 2024, convicted Defendant of one count of conspiracy to commit bank fraud in violation of Title 18 U.S.C. § 1349.[1] The jury hung as to Counts 2–5 of the Indictment and this Court declared a mistrial as to those counts.[2] On October 2, 2025, Defendant was sentenced to 48 months imprisonment, to be followed

---

[1] [Doc. No. 364].
[2] [Doc. No. 358].

1

by two (2) years of supervised release, and was given a report date of November 17, 2025, to begin his sentence.³ On December 20, 2024, Defendant filed a motion for new trial and motion or judgment of acquittal.⁴ The Court denied both motions.⁵

On October 15, 2025, Defendant filed a motion for bail pending appeal, and one day later, filed a timely notice of appeal.⁶ On October 29, 2025, the Court granted Defendant's motion.⁷ On November 13, 2025, the Government filed the instant Motion for Reconsideration regarding the ruling on the motion for bail pending appeal due to the recently issued Fifth Circuit opinion in *United States v. Ryan*, which discusses the application of *United States v. Yates*; (2) oral argument would permit further analysis of this legal issue; and (3) the motion of co-defendant, Charlie Simpson ("Simpson"), requesting the same benefit in part based on the Court's ruling as to Defendant.⁸

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW & ANALYSIS

### A.    Standard of Review

A motion for reconsideration "calls into question the correctness of a judgment." *Templet v. Hydro Chem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). In such instances, "amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly

---

³ [Doc. No. 438].
⁴ [Doc. Nos. 399; 400].
⁵ [Doc. No. 412].
⁶ [Doc. Nos. 446; 449].
⁷ [Doc. No. 452].
⁸ [Doc. No. 463].

discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). As for reconsideration, the Court has recognized that "[w]hile the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsiderations, they remain a legitimate procedural device in criminal proceedings." *United States v. Lighfoot,* No. 3:17-CR-00274, 2025 WL 864296 AT *1 (W.D. La. March 19, 2025). The motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued. *Id.*

The Government is asking the Court to reconsider Defendant's motion for bail pending appeal and the Motion turns on whether the appeal presents a substantial question that could very well be decided Defendant's way on appeal. Act. A defendant has no constitutional right to bail after his conviction and sentencing. *See United States v. Bright*, 541 F.2d 471, 477 (5th Cir. 1976). The Bail Reform Act of 1984, 18 U.S.C. § 3143(b), establishes a presumption against the grant of such bail. Under § 3143(b)(1), a person who has been sentenced to a term of imprisonment "shall be detained" unless the judicial officer finds that the defendant has shown:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in:
> > (i) reversal,
> > (ii) an order for a new trial,

3

> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

The Fifth Circuit has interpreted § 3143(b) to require the defendant to show four factors in order to obtain release on bail pending appeal:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Valera–Elizo*ndo, 761 F.2d 1020, 1025 (5th Cir. 1985) (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985); *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985)); *see also United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) (quoting same). A question is "substantial" if it raises a "substantial doubt (not merely a fair doubt) as to the outcome of its determination." *Valera–Elizondo*, 761 F.2d at 1024. "[I]t is a 'close' question, or one that very well could be decided the other way." *Id.* (internal quotation marks omitted) (quoting *Giancola*, 754 F.2d at 901).

The Government alleges[9] that the Court consider the new Fifth Circuit case, *Ryan*, to find that Defendant fails to raise a substantial question of law. 156 F.4th 583 (5th Cir. 2025). The Court previously examined *United States v. Yates*, 16 F.4th

---

[9] [Doc. No. 463, p. 4].

4

256 (9th Cir. 2021), and concluded in this case that the salary increases served as evidence of a scheme to defraud the bank—rather than United or Trinity—by obtaining substantial salary increases despite the severe cash flow difficulties faced by those entities.[10] Recently, the Fifth Circuit declined to address in depth the *Yates* "salary maintenance" theory, despite the defendant in Ryan arguing that it was fatal to the government's case. *Ryan*, 156 F.4th at 593. The Fifth Circuit reasoned that, first, the government in *Ryan* had not advanced that theory, and second, even if it had, there existed a "mountain of evidence" demonstrating that Ryan had made false statements to induce the bank to issue the loans. *Id.* at 594. In *Ryan*, the Second Superseding Indictment alleged that Ryan and his co-defendants conspired to defraud First NBC Bank by misrepresenting the credit risk rating, purpose, and method of repayment of various loans. *Id.* at 589. At trial, the Government alleged that Ryan conspired with others to deceive the bank into issuing loans to insolvent borrowers who then covertly used their proceeds to make payments on their overdue and overdraft loans. *Id.* at 592. A jury returned a verdict, and convicted Ryan of conspiracy to commit bank fraud, bank fraud, and making false entries in bank records. *Id.* at 588. On appeal, Ryan argued that his convictions were based upon the invalid legal theory that he deprived the bank of accurate information ("accurate information theory"), and that an invalid theory that he deprived the bank of amounts it paid him in salary ("salary maintenance theory"). *Id.* at 592. (citing *Ciminelli v.*

---

[10] [Doc. No. 371].

*United States*, 598 U.S. 306, 309 (2023) ("[F]ederal fraud statutes criminalize only schemes to deprive people of traditional property interests[.]); *Yates*, 16 F.4th at 256).

Further, Ryan argued that he did not deprive anyone of "traditional property interests" and therefore was not guilty of conspiracy to commit bank fraud and bank fraud. *Id.* at 593. The only benefit to Ryan was stated to be, "[h]ere, the Government's case did not rely on a theory of deprivation of information. Instead, it detailed Ryan's lies to get loans so that he could keep insolvent borrowers flush with cash, clear his subpar monthly reports, and in some instances, benefit monetarily given his business and lending relationships with borrowers." *Id.* at 593.

The Fifth Circuit further discussed the "traditional property interest" and held:

> In sum, the evidence shows that Ryan conspired with others to lie and mislead the Bank's Board, auditors, and examiners so that it would issue loan money—a traditional property interest—to insolvent borrowers. Because a rational trier of fact could conclude that Ryan's conduct constituted a scheme to deprive the Bank of loan money, there is sufficient evidence to support his convictions for conspiracy to commit bank fraud and bank fraud.

*Id.* at 594.

Thus, in *Ryan*, there was no distinct benefit to Ryan beyond the monetary advantage he derived from his lending relationship with the borrowers. The same is true here. The evidence presented at trial demonstrated that Defendant conspired with his co-defendant, Charlie Simpson, to issue fraudulent checks to artificially inflate account balances at three different banks, which ultimately caused one bank to lose more than $3.3 million. Therefore, because the *Ryan* Court rejected Ryan's defense and relied on evidence beyond the theory, this Court has even greater reason

6

to conclude that, all evidence considered, a reasonable finder of fact could (and did) conclude that Defendant's conduct constituted a scheme to deprive multiple banks of money. The record establishes that, for no less than a year, Defendant was aware that both entities lacked sufficient operating funds and relied on the check kite scheme to keep day-to-day operations afloat. Essentially, absent the float generated through the bank-fraud scheme, Defendant—acting as CFO of both entities—could not have met the companies' financial obligations, including payment of his own compensation and bonuses. The Court acknowledges that its prior statement that the salary theory was "central, rather than peripheral" to Gardner's case was made in error.[11] At the bottom of it all and with the evidence presented, it is unlikely that Defendant can press that any of the conspiracy elements are missing from the evidence—Defendant and Simpson agreed to commit fraud, Defendant knew of the unlawful purpose of the agreement, and Defendant joined the agreement (by authorizing) with the intent to further the unlawful purpose. *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014).

Based on the issues reconsidered herein and in light of the *Ryan* decision, the Court concludes that Defendant's first issue on appeal does not present a substantial question that could benefit Defendant. The Court further acknowledges that it erred in its initial order by finding that the first issue did raise a substantial question, which led it not to address other issues that Defendant now reasserts.[12] Consequently, the Court will now briefly address said issues.

---

[11] [Doc. No. 452, p. 4].
[12] [Doc. No. 468, pp. 7–9].

The second issue concerns the Court's "curtailing lines of questioning based on *Bruton*, a ruling that the government conceded as erroneous post-trial."[13] Essentially, Defendant claims that because the Court barred Defendant from refreshing Kassidy Broussard's memory in aid of impeaching her, the Court committed an error that raises a substantial question on appeal.[14] The Government argues that Defendants right to present a defense was not violated because improper impeachment is not a valid defense.[15] The Court agrees with the Government. As discussed previously, "[a] witness may not be impeached by an agent's report unless it is adopted by the witness or is a 'substantially verbatim' account."[16] It was clear to the jury that Simpson was responsible for selecting the accounts used for the transfers and setting the transfer amounts, while Defendant only oversaw those actions. This distinction is demonstrated by the verdict, in which Simpson was found guilty of bank fraud and Defendant was not. Accordingly, the Court concludes that the evidentiary issue does not present a substantial question likely to aid the Defendant on appeal.

### III.   CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Government's Motion for Reconsideration [Doc. No. 463] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant report to the United States Marshall's Office on December 29, 2025, before 2:00 p.m. C.S.T.

---

[13] [Doc. Nos. 468, p. 8].
[14] [Doc. No. 446-1, p. 3].
[15] [Doc. No. 450].
[16] [Doc. No. 412, p. 26 (quoting *United States v. Welch*, 810 F.2d 485, 489 (5th Cir. 1987))].

8

MONROE, LOUISIANA, this 5th day of December, 2025.

                                              _____
                                                        TERRY A. DOUGHTY
                                               UNITED STATES DISTRICT JUDGE